Peter S. Pearlman
Matthew F. Gately
**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Park 80 West-Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone: 201-845-9600
Facsimile:  201-845-9423
psp@njlawfirm.com

*Attorneys for Plaintiff*

[Additional Counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>HAYWARD HOLDINGS, INC., KEVIN HOLLERAN, EIFION JONES, CCMP CAPITAL ADVISORS, LP, and MSD PARTNERS, L.P.,<br><br>                    Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Erie County Employees' Retirement System ("Plaintiff") maintaining its principal place of business at 140 West Sixth Street, Erie, PA 16501, by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (a) regulatory filings made by Hayward Holdings, Inc. ("Hayward" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued and disseminated by the Company; (c) analyst reports concerning Hayward; and (d) other public information regarding the Company, including transcripts of earnings calls and conferences held and/or attended by the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This securities class action is brought on behalf of all persons or entities that purchased Hayward common stock between October 27, 2021 and July 28, 2022, inclusive (the "Class Period"). The claims asserted herein are alleged against Hayward, certain of the Company's senior executives and directors, and two controlling shareholders (collectively, "Defendants"), and arise under §§10(b) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.      Hayward designs, manufactures, and markets a broad portfolio of pool equipment and associated automation systems.  Its business is organized into two reportable segments: North America ("NAM") and Europe & Rest of World ("E&RW").  NAM and E&RW accounted for approximately 84% and 16% of total net sales, respectively, for fiscal year 2022.

3.      Hayward sells its products through three sales channels: (1) Distributors; (2) Builders, Retailers, and Services (Direct Sales); and (3) Buying Groups.  Relevant here is Hayward's "Distributor" channel, which represents the majority of Hayward's net sales, and consists of an authorized network of regional and national distributors who service the pool trade (*i.e.*, builders, retailers, and servicers).  Hayward claims to have "long-standing relationships with these trade customers" and "contractual agreements to support [its] continued net sales of [its] products through this channel."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business.  Specifically, Defendants credited the Company's increasing net sales to Hayward's "agile manufacturing capabilities," "competitive positioning," "leading product portfolio," and "innovative technology," as well as the market's "elevated demand" for "higher

volumes," when, in fact, Defendants had engaged in a channel-stuffing scheme[1] to create the appearance of demand that far exceeded actual trends. Relatedly, Defendants issued several statements that claimed, or led investors to believe, that customer inventories were healthy and that Hayward's growth prospects were (at worse) conservative, when, in fact, both were facing problems.

5. When the truth about Hayward's business reached the market, the price of Hayward's stock sharply declined $2.50 per share, or 18.23%, to close at $11.21 on July 28, 2022.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5.

8. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act.

---

[1] In a channel-stuffing scheme, a company inflates its sales and earnings figures by deliberately sending its distribution channel partners more products than they are able to sell to consumers. The practice creates an ephemeral boost in performance, but ultimately cannibalizes future sales as distributors must eventually destock or write down the excess inventory.

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and §27 of the Exchange Act. Hayward was headquartered in this District at the start of the Class Period and many of the acts and practices complained of herein occurred in substantial part in this District.

10. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communication, and the facilities of the national securities markets.

## THE PARTIES

11. Plaintiff purchased or otherwise acquired Hayward common stock during the Class Period as described in the attached Certification and was damaged thereby.

12. Defendant Hayward was headquartered in Berkeley Heights, New Jersey for much of the Class Period, and subsequently completed a relocation of its headquarters to Charlotte, North Carolina in July 2022. The Company is a global designer, manufacturer, and marketer of a broad portfolio of pool equipment and associated automation systems. Hayward's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "HAYW."

13. Defendant Kevin Holleran ("Holleran") was at all relevant times Hayward's Chief Executive Officer ("CEO") and President.

14.     Defendant Eifion Jones ("Jones") was at all relevant times Hayward's Chief Financial Officer ("CFO") and Senior Vice President.   During the Class Period, Defendant Jones sold 189,945 personally-held Hayward shares for proceeds of $3,292,353.

15.     Defendants Holleran and Jones are sometimes referred to herein as the "Individual Defendants."

16.     The Individual Defendants possessed the power and authority to control the contents of Hayward's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Hayward's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions within Hayward, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

17.     Defendant CCMP Capital Advisors, LP ("CCMP") is a New York-based private equity firm specializing in buyouts and growth equity investments.

18.    Defendant MSD Partners, L.P. ("MSD Partners") is a New York-based investment advisor.

19.    Defendants CCMP and MSD Partners are sometimes referred to herein as the "Sponsor Defendants."

20.    During the Class Period, the Sponsor Defendants served as controlling shareholders of Hayward.  Indeed, immediately following Hayward's March 2021 initial public offering ("IPO"), affiliates of the Sponsor Defendants each beneficially owned approximately 30% of Hayward's outstanding common stock, and they collectively maintained majority voting control during the Class Period.  As such, Hayward was considered a "controlled company" under NYSE rules.  In addition, the Sponsor Defendants entered into a stockholders' agreement with the Company pursuant to which they agreed to coordinate the voting of their shares collectively, ensuring them majority voting control over the Company, and providing them with special rights and privileges unavailable to outside investors.

21.    The Sponsor Defendants also oversaw and controlled the management of the Company.  For example, the Sponsor Defendants caused Hayward to hire Defendants Holleran and Jones as CEO and CFO, respectively, prior to the IPO. Numerous directors of Hayward were also affiliated with CCMP and MSD Partners, including Mark McFadden (Managing Director of CCMP), Timothy Walsh (President and CEO of CCMP), Greg Brenneman (Executive Chairman of CCMP),

Christopher Stevenson (Principal of CCMP), Kevin Brown (Co-Head of MSD Partners' Private Capital Group), and Christopher Bertrand (Managing Director of MSD Partners' Private Capital Group). As Hayward has acknowledged, after the IPO it did "not have a majority of independent directors."

22. The Sponsor Defendants used their control over the Company to complete the IPO, in which they each sold over 7 million Hayward shares at $17 per share, as well as multiple follow-on offerings, including during the Class Period. Specifically, in a May 2022 secondary offering ("SPO"), CCMP sold over $245 million worth of Hayward stock while it traded at artificially-inflated prices.

## SUBSTANTIVE ALLEGATIONS

### Background

23. Hayward designs, manufactures, and markets a broad portfolio of pool equipment and associated automation systems. The majority of Hayward's sales are generated through specialty distributors, who in turn sell to pool builders, retailers, and servicers. Hayward claims to have "long-standing relationships with these trade customers," and "contractual agreements to support [its] continued net sales of [its] products through this channel."

### Defendants' Materially False and Misleading Statements and Omissions During the Class Period

24. The Class Period begins on October 27, 2021, when Hayward announced its third quarter fiscal year 2021 ("3Q21") financial results and touted an

increase of net sales by 56%, which purportedly was driven by "*higher volumes*, mainly in residential pool equipment sales as we continued to see *elevated demand* from aftermarket upgrades and new construction." According to Defendants, this growth "continue[d] to benefit from a *robust demand environment* for outdoor living products, production capabilities, new products . . . and pricing." In addition, the so-called strong performance in the first nine months of the fiscal year allegedly provided "*increased visibility into the order file*," and resulted in Defendants exuding "increased confidence in our ability to execute growth levers."[2] Consequently, Hayward raised its net sales guidance for the full fiscal year 2021 to "59% to 62% year-over-year compared to its previously provided outlook of 54% to 58%."

25.    Defendants Holleran and Jones reinforced these claims during the Company's 3Q21 analyst call, which was held the same day. For example, in his prepared remarks, Defendant Holleran claimed that Hayward had "another very strong quarter of growth as [it] delivered net sales of $351 million, [representing] an increase of 56% year-over-year." Defendant Jones credited "*higher volumes* mainly in residential pool equipment" and Hayward's ability to "*increase production capacity to keep up with demand*" for the "increase in net sales." Defendant Jones also claimed to see "growth across the product portfolio with *demand* for more

---

[2]    Herein, all emphasis and alteration are added unless otherwise indicated.

efficient, environmentally friendly and automated pool products *remaining robust*,"
before then assuring the market that, "the pool market is seeing *extended demand
cycles* due to the *healthy* levels of upgrades and repairs in addition to new pool
construction."  Consequently, according to Defendant Holleran, Hayward is "*very
well positioned to continue to generate growth* for all stakeholders in 2021 and the
years ahead."

26.     During the Q&A portion of the 3Q21 earnings call, Defendant Holleran
spoke about Hayward's channel inventories, which he claimed were in a "healthy
position" and which he assured the market Hayward had a good grasp on:

> *Inventories are in a healthier position than they were a quarter
> or 2 ago*.  If you look at it from a days-on-hand standpoint, it's still in
> a – it's an improving position, but certainly not too much by any means.
>
> Admittedly, the mix of that inventory may not be as ideal as any
> of us would like it.  There's still some products that are in shorter
> supply.  So we're working feverishly to address that.  But in total, I
> think we're taking some extra shelf space right now.  So we look at it
> really through 2 lenses: in absolute terms, what's – what are the
> inventory levels looking like, but also then are accounting for some
> additional shelf space through our share gains.
>
> So yes, *I mean we keep close tabs on it.  We have good insight
> from our large distributor partners.  And these are conversations that
> we have with them in understanding what they need more of and
> trying to improve that mix so that we can push more product out to its
> ultimate use in the backyard*.

27.     Accompanying the Company's 10-Q (and each subsequently filed 10-
Q for that matter) were signed management SOX certifications that affirmatively

stated that both Defendants Holleran and Jones, "reviewed th[e] Quarterly Report on Form 10-Q" and that:

> 2.  Based on [their] knowledge, [the] report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3.  Based on [their] knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report . . . .

28.     The SOX certifications further affirmed that the "registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in the Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:"

> a. Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
>
> *       *       *
>
> c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusion about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation . . . .

29.     On January 25, 2022, Defendants announced select fiscal fourth quarter and full year 2021 preliminary financial results, including an increase in net sales

due to "*continued . . . demand* from aftermarket upgrades and new construction." According to Defendants, "*[n]et sales growth continue[d] to benefit from the demand environment for outdoor living products, [Hayward's] production capabilities, introduction of new products, . . . and price increases in response to higher inflation*." Defendants also credited "higher volumes, mainly in residential pool equipment sales as [it] *continued to see demand* from aftermarket upgrades and new construction, and *channel inventory replenishments*" for the increase in net sales observed.

30. On March 2, 2022, Hayward released its fourth quarter and fiscal year 2021 financial results, announcing that net sales increased 35% and 60% year over year, respectively, and offered guidance that called for net sales growth of 9% to 12%. In the accompanying press release, Defendant Holleran stated that the Company was "entering 2022 with significant momentum" and that he continues to be "encouraged by underlying industry demand levels."

31. That same day, Defendants hosted an earnings call during which Defendant Holleran claimed that Hayward's "*successes this year* with servicing [its] end markets with reliable product[s] and innovative new technologies in a demanding operating environment *is a direct result of [its] manufacturing capabilities and investments in strengthening [Hayward's] competitive positioning*." He stated that the increase in net sales observed during the fourth

11

quarter, which represented an increase of 35%, "was ***primarily driven by continued demand*** in residential pool equipment sales, in particular aftermarket upgrades, service and new construction," and that Hayward's "***[n]et sales growth continue[d] to benefit from a robust demand environment*** for outdoor living products, ***increased capacity and capabilities*** leading to higher output, and ***strategic pricing*** actions." Defendant Holleran also credited Hayward's success in executing "on a number of growth levers such as SmartPad conversion," increasing "market adoption of new products," and expanding its "customer base, all of which were supported by Hayward's investment in capacity and distribution, resulting in higher output levels and driven by strong secular trends in outdoor living," for the Company's net sales growth of 60% to close the full year. And, with respect to full year 2022, Defendant Holleran stated that Hayward expects to "grow net sales in the range of 9% to 12% compared to 2021," based on "***strong carryover demand, conversion of current order file, pricing benefits and ongoing product adoption***." Defendant Jones likewise touted the Company's performance and expressed pleasure with "the continued demand and ongoing adoption for [Hayward's] products that [he] ha[d] seen throughout the channel."

32. During the question-and-answer portion of the call, Defendants were asked about Hayward's inventory levels and backlog. Defendant Holleran

represented that the Company was confident it did not have too much inventory and

that product levels reflected underlying customer demand, stating in relevant part:

> *I think it's more of the latter, Mike. I think it's a very credible order file. There's been plenty of price increases that we've had to announce into the industry. We ran kind of a modest early buy last year. If the channel was feeling as if they had too much or were unhappy with their inventory turns, I think there was opportunity for them to slow the bookings or even cancel and we've seen negligible cancellations through those time periods. So we feel very good about the credibility of the order file.*
>
> As for inventory levels, they are getting back to more normal levels, good turns on it. *We don't think it's elevated*. But what I will acknowledge is, I think that there's some shortages of some particular SKUs that we'd like to be able to solve, and we're working hard here the beginning part of 2022 to try and rectify that, whether it's some salt or other products. We know that it's not a perfectly balanced inventory from a SKU standpoint, but we're working hard to solve that.

33.    In responding to a question about the Company's outlook, Defendant

Jones doubled down on the "*very strong order file*" Defendant Holleran touted, by

stating that the Company had a "*level of conservatism built into [its] forecast*."

Defendant Holleran explained: "We feel very positive about the start of the year. To

your point, *the sort of very strong order file that we have on the business right now*

as we step into the primary season period of Q2, we'll get a better read on how the

balance of the year is building out, *but it's fair to say that the guidance we've given*

*right now does have an element of conservatism*."

34.    A week later, on March 9, 2022, Hayward filed its Annual Report on

Form 10-K, which again touted the Company's net sales growth and explained that

the growth observed was "driven by market demand, expansion of [Hayward's] trade customers, and product offering[s]."

35.    On April 28, 2022, Hayward announced its first quarter fiscal year 2022 ("1Q22") financial results, which included a 23% year-over-year increase in net sales that was due to "higher volumes driven by production capabilities, adoption of new products and strategic pricing actions to offset the inflationary environment."  In commenting on the quarter, Defendant Holleran stated: "We entered 2022 with significant momentum *given the robust end market demand*, strengthened product offering, and our enhanced operational capabilities.  I am pleased to report another quarter of strong financial performance as our team worked hard to continue to supply our customers with leading products and solutions."  He continued: "The backdrop for the pool industry remains attractive and continues to be supported by *sustainable secular demand trends* across new construction and the aftermarket which represents approximately 80% of our business."  Defendant Holleran added: "*Our momentum is being driven by our innovation and our ability to meet market demand and we are confident that we will be able to perform in the near-term* while generating long-term value for all our stakeholders."

36.    During the Company's earnings call, also held on April 28, 2022, Defendants Jones and Holleran reaffirmed these messages and continued to convey to the market that inventory levels at customers were solid and that there was a

reasonable basis for their belief in the Company's outlook.  For example, during the question-and-answer portion of the call, Defendant Holleran was asked whether Hayward is seeing "any signs of consumer spending slowing down or any cancellations in the order file," to which he responded in relevant part:

> We really haven't seen any kind of cancellations.  We're in pretty close contact with both channel partners and our dealers, and *the work on the books and new lead generation both remain strong despite plenty of price increases*.  And obviously, *the channel inventory position has gotten better.  We're in a much better position going into the start of the season in 2022*.
>
> So no, *we're still seeing robust demand and the order file on the books is still very strong and seems to be pressure tested*, and product is going to be installed in the backyard.

37.    Later in the call, Defendant Holleran was asked again about channel inventory, to which he repeated how the Company keeps "close tabs on it" and confirmed management "feel[s] comfortable with it."  He added in relevant part:

> *The industry has also grown, so there needs to be additional inventory in there to support the overall industry growth, which has been 30-plus percent over the last few years.  And then from – specifically to Hayward, some of our share gains, that would require some incremental inventory positions for the Hayward product in the channel*.
>
> So all that said, *we feel comfortable with our inventory position* from a days on hand standpoint here at the start of the season.  Our guidance assumes that there will be greater sell out than sell into the channel during the 2022 season.  And these are the things that we're going to keep close tabs on as we work through the year and start – continue with our guidance updates and look out into 2023, Mike.

38.    On April 29, 2022, Hayward filed with the SEC on Form 10-Q the Company's financial results for the first quarter of 2022 ended April 2, 2022, which was signed by the Individual Defendants.  The Form 10-Q contained the financial information regarding Hayward's first fiscal quarter financial results contained in the 1Q22 release and related earnings call.

39.    On May 4, 2022, Hayward filed with the SEC a prospectus supplement on Form 424B7, which, together with other documents incorporated by reference, formed the registration statement for the SPO (the "Registration Statement").  The Registration Statement was signed by the Individual Defendants and representatives of the Sponsor Defendants on Hayward's Board of Directors.  The Registration Statement made available 24 million Hayward shares to the investing public at $14.50 per share, for anticipated total proceeds of $348 million.  The Registration Statement continued to claim that the Company's net sales growth was driven by increased demand in Hayward's Distributors sales channel.

40.    The statements referenced in ¶¶24-39 above were materially false and misleading because they misrepresented and failed to disclose that the market's demand was not "elevated" and Hayward's net sales growth was not due to its "agile manufacturing capabilities," "competitive positioning," "leading product portfolio," or "innovative technology," but rather Hayward and its management team had

engaged in a channel-stuffing scheme designed to artificially boost Hayward's short-term sales and earnings. In other words, Hayward had flooded its channel partners with inventory that they did not want or need at a level that far outpaced then-existing consumer demand. This not only materially impaired Hayward's ability to sell to channel partners in the future, but also made it reasonably likely that Hayward's customers would have to undertake (and did undertake) a massive destocking effort to reduce inventory levels, rendering Hayward's projected 2022 financial results neither achievable nor reasonably based in fact.

### The Truth Emerges

41.    On July 28, 2022, two months after closing the SPO, Hayward announced its second quarter 2022 financial results. Despite reporting that net sales increased by 10%, Hayward revealed that it was negatively impacted by "***lower volumes***," primarily the result of "20% lower volume sales in Europe due to geopolitical factors, poor weather in seasonal markets in North America, ***and initial channel inventory reductions***."

42.    In commenting on the quarter, Defendant Holleran revealed that Hayward "***expect[ed] [its] channel partners will reduce their Hayward inventory on hand by approximately 4 to 6 weeks in the second half of 2022***." As a result, Defendant Holleran announced that Hayward is "***reducing [its] 2022 guidance to reflect this inventory reduction***," such that for fiscal year 2022, Hayward's revised

outlook for net sales would now be "*a decline of 2% to 6% year-over-year*." Notably, during the earnings call held that same day, Defendant Holleran admitted that the inventory bottleneck traced back to inventory decisions made "*at the end of 2021*" – *i.e.*, the start of the Class Period. On information and belief based on the publicly available facts and counsel's investigation to date, the conduct at issue here was occurring at the start of the Class Period.

43.     On this news, the price of Hayward's common stock declined $2.50 per share, or 18.23%, to close at $11.21 per share on July 28, 2022, representing a nearly 23% decline from the SPO offering price.

44.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

**Post-Class Period Facts Further Demonstrating Materiality**

45.     On November 1, 2022, Hayward released its third quarter 2022 financial results and held an analyst call that same day. Despite "making progress on recalibrating the level of Hayward inventory held by [its] channel partners," Hayward once again revised downward its fiscal year 2022 net sales citing the "continued normalization of channel inventory," among other things.

46.     In his prepared remarks, Defendant Holleran noted how "[d]istributors are reducing safety stocks built up during the period of strong demand and

significant supply chain disruption."  According to Defendant Holleran, Hayward "estimate[d] a reduction of approximately $80 million occurred in the third quarter . . . compared to a meaningful inventory build in the prior year period," and that, as a result, Hayward "now expect[ed] full year 2022 net sales to decline approximately 6%."

47.    Defendant Jones likewise addressed the 30% decline in net sales observed during the quarter by blaming it on, among other things, "a 44% reduction in volume . . . ***driven by distribution channel destocking***."  Defendant Jones also noted how "***[i]n the comparable quarter, the channel pulled in inventory, whereas this quarter . . . the channel destocked approximately $80 million***."

48.    By November 2, 2022, Hayward's common stock traded as low as $8.78 per share, representing a two-day decline of over 4%.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all those who purchased or otherwise acquired Hayward common stock during the Class Period and were damaged thereby (the "Class").  Excluded from the Class are the Defendants named herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs,

successors, or assigns, and any entity in which Defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Hayward common stock was actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Hayward or its transfer agent and/or the NYSE, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal laws that are complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the Exchange Act was violated by Defendants as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Hayward;

(c)    whether the Individual Defendants caused Hayward to issue false and misleading statements during the Class Period;

(d)    whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

(e)    whether the prices of Hayward common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

55.     Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## PRESUMPTION OF RELIANCE

56.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     Hayward common stock is traded in an efficient market;

(d)     the Company's common stock is liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company's common stock traded on the NYSE in the United States;

(f)     the Company was covered by securities analysts;

(g)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

(h)     Plaintiff and members of the Class purchased, acquired, and/or sold Hayward common stock between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed without knowledge of the omitted or misrepresented facts.

57.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

58.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
### Violations of §10(b) of the Exchange Act and Rule 10b-5
### (Against All Defendants)

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     This Count is asserted against Defendants and is based upon §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

61.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct pursuant to which they knowingly or recklessly

engaged in acts, transactions, practices, and courses of business that operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Hayward common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Hayward common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

62.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated, directly or indirectly, in the preparation and/or issuance of the annual reports, SEC filings, press releases, and other statements and documents, as described above, including statements made to securities analysts and the media, that were designed to influence the market for Hayward common stock. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Hayward's business and operations.

63.    By virtue of their positions at Hayward, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted, as described above.

64.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to, and did, directly or indirectly, control the content of the statements of Hayward.  As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, truthful, and complete information with respect to Hayward's business.  As a result of the dissemination of the aforementioned false and misleading public statements, the market price of Hayward common stock was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Hayward's business, which were concealed by Defendants, Plaintiff and the other members of the Class

purchased or otherwise acquired Hayward common stock at artificially inflated prices and relied upon the price of the securities, integrity of the market for the securities, and/or statements disseminated by Defendants and were damaged thereby.

65.   During the Class Period, Hayward common stock was traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased, or otherwise acquired Hayward stock at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Hayward common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Hayward common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.   By reason of the conduct alleged herein, Defendants have knowingly or recklessly—directly or indirectly—violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

<u>**COUNT II**</u>
**Violations of §20(a) of the Exchange Act**
**(Against the Individual Defendants and the Sponsoring Defendants)**

68.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69.     This Count is brought against the Individual Defendants and the Sponsoring Defendants for control person liability under §20(a) of the Exchange Act.

70.     During the Class Period, the Individual Defendants participated in the operation and management of Hayward and conducted and participated, directly and indirectly, in the conduct of Hayward's business affairs.  Because of their senior positions at and/or control of the Company, the Individual Defendants knew the truth about Hayward's business and the scheme to artificially inflate the Company's stock price.

71.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information,

with respect to Hayward's business, and promptly correct any public statements issued by Hayward that had become materially false or misleading.

72.    Because of their position of control and authority, as senior directors or officers, the Individual Defendants were able to, and did, control the contents of the various press releases and public filings that Hayward disseminated in the marketplace during the Class Period concerning the Company's business. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Hayward to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Hayward within the meaning of §20(a) of the Exchange Act.  In these capacities, the Individual Defendants participated in the unlawful conduct alleged herein, which artificially inflated the market price of Hayward's common stock.

73.    The Sponsoring Defendants controlled Hayward and the Individual Defendants for the reasons detailed herein, including their ownership of a majority of Hayward voting stock, control of the Board, influence over Hayward management, historical relationship with the Company, and the various agreements that these defendants had caused the Company to enter into.

74.    By reason of the above conduct, the Individual Defendants and the Sponsoring Defendants are liable pursuant to §20(a) of the Exchange Ac for the violations committed by Hayward.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that this action is a proper class action;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the other members of the Class pre- and post-judgment interest, as well as reasonable attorneys' fees, expert fees, and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

DATED:  September 28, 2023          **COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**

/s/ Peter S. Pearlman
Peter S. Pearlman
Matthew F. Gately
Park 80 West-Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone: 201-845-9600
Facsimile:  201-845-9423
psp@njlawfirm.com

29

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Thomas L. Laughlin, IV (*pro hac vice* to be submitted)
Donald A. Broggi (*pro hac vice* to be submitted)
Jonathan M. Zimmerman (Bar No. 204322016)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
tlaughlin@scott-scott.com
dbroggi@scott-scott.com
jzimmerman@scott-scott.com

*Attorneys for Plaintiff*